# STATE OF MICHIGAN

# COURT OF APPEALS

SENTA REYES,

   Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN, DR. PATRICIA
BAUER, and DR. MARILYN WOOLFOLK,

   Defendants-Appellees.

UNPUBLISHED
February 9, 2016

No. 324124
Washtenaw Circuit Court
LC No. 12-000087-CZ

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants and dismissing her gender discrimination claim. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff attended the University of Michigan School of Dentistry. She received several deficient grades during her first two years. The school's Executive Committee eventually placed plaintiff on academic probation, and required her to retake the entire second year of the program during the academic year of 2009. At the beginning of the Fall semester of 2009, plaintiff spoke with some faculty at the School of Dentistry about how to approach her repeated year. Plaintiff was informed by defendant Dr. Marilyn Woolfolk, a professor of dentistry and Assistant Dean for Students Services, that any leniency regarding her repeated classes was at the discretion of the individual professors. A faculty member suggested that plaintiff talk to "MG," a male student who had also been required to repeat his second year in the same program. Plaintiff testified that when she spoke with MG, who had repeated his second year of the program during the previous academic year, he indicated that some faculty members might allow her flexibility with class content. Plaintiff spoke with her instructors about what coursework was required in repeating her courses. Some instructors required that plaintiff attend all classes and complete all of the usual coursework. Others excused plaintiff from completing certain requirements, such as hands-on practice or attendance.

Plaintiff continued to struggle academically during the Fall semester of 2009 and Winter semester of 2010. The Executive Committee was notified of her poor grades in March of 2010,

-1-

but decided to postpone review of plaintiff's academic standing until May of 2010. The record reflects that a review of her performance was ultimately completed in June of 2010.

During the Spring semester of 2010, one of the courses that plaintiff was required to retake was Preclinical Endodontics I 637 ("Endodontics"), a two-week intensive course with a lab component and final competency and written exams, taught by defendant Dr. Patricia Bauer. Plaintiff had previously taken this course and passed it. A week or two before the start of the Endodontics course, plaintiff approached Dr. Bauer in a common area of the Dental School to discuss the course requirements. Plaintiff testified at her deposition that she told Dr. Bauer that she "needed to take the entire year over again" and inquired about elements of the class that she might not have to repeat. Plaintiff further testified that Dr. Bauer asked if she had passed the class the first time, and when plaintiff responded that she had passed, Dr. Bauer told plaintiff that she would be required to complete some practice endodontic work to demonstrate that plaintiff "was still able to do that work, do the process itself." According to plaintiff, Dr. Bauer told her to retrieve an endodontics box from the dental store and "perform a few procedures on those teeth for me and get me back the work."

However, Dr. Bauer testified that she did not excuse plaintiff from any class requirements. Dr. Bauer testified that, under her course policies, students who have previously taken and passed Endodontics but who have taken time off from school sometimes retake her class to make sure that their endodontic skills are adequate. Those students are not required to attend every session; they only need to demonstrate that they can competently treat patients. Dr. Bauer denied that plaintiff told her she was repeating the entire year or that she was required to take the course for a grade. According to Dr. Bauer, if plaintiff had mentioned that she needed a grade for the course, Dr. Bauer would never have exempted her from taking the final examination. Dr. Bauer testified that she first learned that plaintiff was taking Endodontics for a grade when the Registrar sent her a grade roster at the conclusion of the course. Plaintiff ultimately received a "Y" grade in Endodontics, which indicates that the grade was "deferred."

During a previous semester of a prior academic year, Dr. Bauer had told MG, who also had been required to retake her class, that he just needed to take the final examination for a grade, and excused him from class participation; MG attested by affidavit that he had told Dr. Bauer that he was getting married during the first week of the course and going on his honeymoon during the second week of the course. MG took the final examination and received a passing grade in Dr. Bauer's course.

On June 9, 2010, the executive committee met to evaluate plaintiff's performance and determine whether she could continue in the program. Plaintiff submitted a letter to the committee, explaining that she had received a Y grade in Endodontics. Plaintiff wrote, "I met with Dr. Bauer yesterday and she made it clear that she would not have exempted me from class participation if she had known certain aspects of my repeating the D2 year. I regret this miscommunication and now know that I should have followed up with additional correspondence to assure her understanding of my situation." The committee discussed plaintiff's enrollment and decided to dismiss plaintiff from the program "for unsatisfactory academic performance." The committee explained in its letter to plaintiff, "Our records indicate the following area of non-compliance: failure to attend and successfully complete Course 637 Preclinical Endodontics I." It further stated: "Your failure to successfully attend and complete a

required D2 course in combination with your overall academic record and failure to fully embrace the conditions for continued enrollment as reflected by your attempts to remediate certain courses instead of repeating them, has resulted in the decision of the Executive Committee to dismiss you from the School of Dentistry."

Plaintiff filed a complaint of race discrimination with the University of Michigan's Office of Institutional Equity and was ultimately unsuccessful. She also filed a lawsuit in the United States District Court for the Eastern District of Michigan, alleging numerous federal constitutional claims, which was also ultimately unsuccessful. See *Reyes v Bauer*, ___ F Supp ___ (ED Mich 2013), slip op at 16. Plaintiff then filed suit in the Washtenaw Circuit Court and in the Court of Claims alleging that defendants had discriminated against plaintiff on the basis of her gender in violation of the Elliott Larsen Civil Rights Act (ELCRA), had violated her due process and equal protection rights, had caused her to detrimentally rely on Dr. Bauer's statement that plaintiff was excused from some class participation, and had breached an express oral contract with plaintiff.

Her cases were joined and heard in the Washtenaw Circuit Court. The parties stipulated to the dismissal of all claims except the gender discrimination claim. The trial court then granted defendants' motion for summary disposition on the gender discrimination claim, finding, in relevant part, that plaintiff and MG were not similarly situated and that plaintiff could not make out a claim for gender discrimination. This appeal followed.

## II. STANDARD OF REVIEW

MCR 2.116(C)(10) provides that summary disposition is proper where "there is no genuine issue as to any material fact." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We review de novo a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). This Court considers the affidavits, pleadings, depositions, admissions, and other evidence in the light most favorable to the party opposing the motion for summary disposition. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

## III. ANALYSIS

Plaintiff argues that the trial court erred in its application of the summary disposition standard, and that a genuine issue of material fact exists regarding whether she and MG, a male student, were similarly situated. We disagree, and further conclude that reversal is not required because plaintiff did not present sufficient evidence for a reasonable jury to conclude that gender was a determining factor in her dismissal.

The ELCRA, MCL 37.2101 *et seq.*, provides in relevant part that educational institutions may not "[e]xclude, expel, limit, or otherwise discriminate against . . . an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of religion, race, color, national origin, or sex." MCL 37.2402(b). Under the ELCRA, a plaintiff has the initial burden of proving a prima facie case of gender discrimination. *Lytle v Malady (On Rehearing)*, 458

Mich 153, 172-173; 579 NW2d 906 (1998).[1]  Two categories of claims exist under this section: disparate treatment and disparate impact.  *Wilcoxon v 3M*, 235 Mich App 347, 358; 597 NW2d 250 (1999).  Here, plaintiff alleges only disparate treatment.

Disparate treatment requires a showing of either intentional discrimination against members of a protected class or against an individual plaintiff.  *Duranceau v Alpena Power Co*, 250 Mich App 179, 182; 646 NW2d 872 (2002).  To establish a prima facie case of discrimination, plaintiff must prove by a preponderance of the evidence that (1) she was a member of the protected class; (2) she suffered an adverse action; (3) she was qualified for the position; and (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.[2]  *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997).  To demonstrate that another person is similarly situated, a plaintiff must prove that "all of the relevant aspects" of his situation were "nearly identical" to those of her situation.  *Town*, 455 Mich at 699.

Once a plaintiff has established a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory justification" for the decision.  *Lytle (On Rehearing)*, 458 Mich at 174.  If the defendant is able to articulate a nondiscriminatory justification for the decision, the burden shifts back to the plaintiff to show there was a triable issue that the school's proffered reasons were not true reasons, but were a mere pretext for discrimination.  *Id*.  "To avoid summary disposition under the disparate treatment theory, the plaintiff must present sufficient evidence to permit a reasonable juror to find that for the same or similar conduct the plaintiff was treated differently from a similarly situated male."  *Duranceau*, 250 Mich App at 182.  The plaintiff must introduce "sufficient evidence for a reasonable jury to conclude that [ ] sex discrimination was a determining factor" in the adverse decision.  *Town*, 455 Mich at 706.

In determining that plaintiff and MG were not similarly situated, the trial court stated as follows:

MG submitted a Declaration in connection with Reyes' federal court case (DE H).  MG declared that he told faculty that he had to retake their

---

[1] The education provisions in MCL 37.2402 have rarely been addressed by the courts.  "Because the educational provisions of the act have received little judicial interpretation and because the statutory language employs terms of art used and judicially interpreted extensively in the specialized but extensive field of employment discrimination, we look to these decisions to help us interpret and apply the law to the facts."  *Fonseca v Michigan State University*, 214 Mich App 28, 30, 542 NW2d 273 (1995).

[2] It is undisputed that the first two elements were satisfied, as plaintiff was a member of a protected class and suffered an adverse action.  Given her academic probation, it may be arguable whether plaintiff "was qualified for the position"; however, that issue is not before us on appeal.  The only element before us on appeal is whether plaintiff was treated differently than a "similarly situated" person outside the protected class.

courses. Reyes never told that to Dr. Bauer. Dr. Bauer testified that MG "took a competency and it was graded, the same competency everybody else takes for that course and got a grade, and he took a written for that, the course, and that was graded....So those two things were done." MG states in his Declaration that Dr. Bauer said he needed to take the clinical final. In other words, there was a basis upon which to give a grade to MG, unlike with Reyes, who did nothing for the entire two week course. Dr. Bauer testified that all Reyes said was, what do I need to do for your course"? Reyes admits that she miscommunicated with Dr. Bauer, and Reyes acknowledges that when she explained the circumstances to Dr. May, he indicated that he would have felt deceived.

The Court finds that MG was not similarly-situated to Reyes, under either standard argued by the parties, either the "all relevant aspects that are nearly identical" standard set forth in *Humenny* or the more "flexible particular aspect" standard as enunciated in *Louzon*. While both were required to repeat the second year, MG was not similarly-situated. MG's Declaration shows that he first talked with Dr. Bauer about retaking her class. Second, MG requested a special accommodation for evaluating his knowledge and skills because he was getting married during the first week of her course and that he had his honeymoon planned for the second week. MG told Dr. Bauer enough information about needing a grade in the course that she required him to take the written exam. Reyes, unlike MG, was not forthcoming with Dr. Bauer about the need to be properly evaluated for a grade.

After discussing plaintiff's contentions and the evidence in greater detail, the trial court concluded:

The Court finds that Reyes cannot make out a prima facie case of sex discrimination because she has not shown that she was treated differently than a similarly-situated male student. The Court has reviewed the opinion of Judge Edmunds in Reyes' federal court case. That opinion is not precedential upon this Court although it is consistent with this Court's ruling. Judge Edmunds recognized that Reyes did not make out a prima facie case and ruled that MG was not similarly situated for purposes of Reyes' equal protection claim (DE I). This Court comes to the same conclusion.

As the trial court noted, the issue of whether plaintiff and MG were "similarly situated" had previously been addressed in plaintiff's federal court case, albeit in the context of her equal protection claim. In response to the defendants' motion for summary judgment in that case, plaintiff had argued, similarly as she argues in this case, that she was the victim of disparate treatment based on her gender. Specifically, she contended, as she does here, that MG was similarly situated to her yet was treated differently. The federal district court disagreed, stating:

The parties focus on the similarly-situated prong. For a plaintiff to show that she was treated differently than a similarly situated male for the same or similar conduct, she must show that "all relevant aspects" of her situation are "nearly identical" to those of the allegedly similarly situated persons. *Humenny*

v. *Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (quotation marks and citations omitted). The male must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish his conduct or the teacher's treatment of him for it. *Id*. (quotation marks and citations omitted).

At first glance, MG appears to be a similarly situated person to Plaintiff. But he is not. And his declaration shows how he is not similarly situated. While MG did have to repeat his second year, as Plaintiff did, under similar conditions that the EC imposed, and he did have to talk with Dr. Bauer about retaking her class, there are differentiating and mitigating circumstances that distinguish his conduct and Dr. Bauer's treatment of him. First, MG told Dr. Bauer about his extenuating circumstances of him getting married during the first week of her course and that he had his honeymoon planned for the second week. That circumstance takes MG out of a similarly situated person as to Plaintiff, for he was unable to attend class and made Dr. Bauer aware of that fact. Second, MG apparently told Dr. Bauer enough information about needing a grade in the course that she required him to take the written exam, which he did, whereas Plaintiff did not.

The onus was on Plaintiff to convey sufficient information to Dr. Bauer so that Dr. Bauer could properly fashion the course's requirements to Plaintiff. Plaintiff admitted as much in her letter to the EC on June 9, 2010, when she stated that there was a miscommunication between her and Dr. Bauer and that she should have followed up with Dr. Bauer.

Plaintiff has not shown that MG was similarly situated to her in all relevant aspects without mitigating or differentiating circumstances. Plaintiff's equal protection claim fails.

Plaintiff argues on appeal in this case that we should give no weight to the federal court's decision. But while it certainly is not binding on this Court, it nevertheless may be persuasive. See *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000).

Plaintiff maintains that the federal court was applying a "much more stringent" equal protection analysis than the discrimination analysis required by the ELCRA. That is, plaintiff posits that, in the former, a plaintiff must prove intentional or purposeful discrimination. However, while that may be true, that distinction does not undermine the federal court's analysis of the "similarly situated" component of plaintiff's gender discrimination claim; rather, to that extent the analyses are the same. See *Town*, 455 Mich at 695, citing *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

We find the federal court's analysis, and that of the trial court, to be persuasive. The parties agree that plaintiff was obliged to prove that "all relevant aspects" of her situation were "nearly identical" to that of MG. *Hummeny v Genex Corp*, 390 F3d 901, 906 (CA6, 2004). She failed to do so. A crucial difference between plaintiff's situation and MG's is simply that MG

-6-

took and passed Dr. Bauer's Endodontics final and received a class grade, whereas plaintiff did not; this difference led directly to the different outcomes with respect to their academic probations. Moreover, while plaintiff acknowledges the importance of this distinction, we reject plaintiff's apparent position that it was Dr. Bauer's obligation to probe deeply enough into plaintiff's situation to ascertain the details of her academic probation and to explicitly communicate to her that she would be required to take the course for a grade, including taking the final examination, and that her failure to do so "caus[ed plaintiff] to fail." Plaintiff was on academic probation for deficient performance. Defendants granted her several reprieves and opportunities to address her academic deficiencies. Ultimately, she was required to repeat her second year. The presumption under such circumstances, absent an informed determination otherwise by the teacher of a course, is and must be that the affected student is required to successfully complete all aspects of the repeated courses, including taking them for grades and taking final examinations. Plaintiff's attempt to shift to defendants the obligation to elicit from plaintiff all pertinent information, and then to explicitly direct plaintiff to perform particular course requirements that are already required by default, is unpersuasive.

Moreover, even if we were to find a genuine issue of material fact regarding whether plaintiff and MG were similarly situated, the trial court did not err in granting summary disposition in favor of defendants because plaintiff did not establish a genuine issue of material fact regarding whether gender was a determining factor in her dismissal. *Town*, 455 Mich at 706; *Duranceau*, 250 Mich App at 182. This Court may affirm a trial court's grant of summary disposition for reasons different than relied on by the trial court. *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 86; 592 NW2d 112 (1999).

Assuming for the sake of argument that plaintiff offered sufficient evidence to support a prima facie case, a presumption of discrimination would then arise, shifting the burden to defendants to articulate a "legitimate, nondiscriminatory justification" for the decision. *Lytle (On Rehearing)*, 458 Mich at 174. Defendants argued in their motion for summary disposition that plaintiff's deficient grades provided ample grounds for her dismissal and presented significant evidence of plaintiff's poor academic performance, despite numerous chances to improve. Because defendants were able to articulate a legitimate, nondiscriminatory reason for their decision, any presumption of discrimination raised by plaintiff's prima facie case was rebutted.

To succeed on summary disposition, then, plaintiff would be required to show that defendants' reasons were mere pretext and that gender was a determining factor in the decision to dismiss her. *Town*, 455 Mich at 706; *Duranceau*, 250 Mich App at 182. Here, regardless of whether plaintiff presented sufficient evidence to show that she was treated differently from MG, she failed to show that gender was a factor at all, much less a determining factor, in the decision to dismiss her from school. In fact, plaintiff admitted to the executive committee that her grade in Dr. Bauer's class resulted from Dr. Bauer's mistaken impression that plaintiff did not require a grade in her class, and admitted that she did not follow up with Dr. Bauer to ensure that she could meet the requirements of her academic probation. Although plaintiff's dismissal arguably may have resulted in part from her unsuccessful attempts to navigate the requirements of her academic probation, the fact remains that plaintiff did not produce any evidence to establish a genuine issue of material fact regarding whether her dismissal was motivated by her gender. Accordingly, the trial court properly granted summary disposition to defendants. *Id*.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray