**INTERNATIONAL FINANCIAL SERVICES, INC., Plaintiff,**

v.

**Allen J. FRANZ, et al., Defendants and Third-Party Plaintiffs, Respondents,**

v.

**GERBER SCIENTIFIC INSTRUMENT CO., Third–Party Defendant, Appellant.**

**No. C5–93–1550.**

Court of Appeals of Minnesota.

May 3, 1994.

Review Granted June 29, 1994.

Jeffrey W. Lambert, Lee R. Bissonette, Lambert & Boeder, Wayzata, and David F. Herr, Cooper S. Ashley, Maslon, Edelman, Borman & Brand, Minneapolis, for appellant.

Rodney J. Mason, Chandler and Maslon, Ltd., Thomas B. Olson, Olson, Usset, Rothnem & Weingarden, Edina, and Eric J. Magnuson, Karen I. Johnson, Rider, Bennett, Egan & Arundel, Minneapolis, for respondents.

Considered and decided by ANDERSON, C.J., and NORTON and MULALLY,* JJ.

## OPINION

ANDERSON, Chief Judge.

Respondent Franz Engineering Reproductions, Inc. (Franz Engineering) sued appellant Gerber Scientific Instrument Company (Gerber), seeking damages for breach of warranties and violations of the Minnesota Con-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

sumer Fraud Act. The trial court dismissed Franz Engineering's consumer fraud claims, but denied Gerber summary judgment on the breach of warranty claims. The court also denied Gerber's motions to exclude certain evidence.

Before submitting the matter to the jury, the trial court ruled that Gerber and Franz Engineering's contract excludes consequential damages as a matter of law. By special verdict, the jury found (1) Gerber did not breach the express warranty; (2) Gerber did breach the implied warranty of merchantability; (3) Gerber failed to remedy the breach of warranty by repair or replacement as promised in the contract; and (4) the remedy failed of its essential purpose. Pursuant to the jury's special verdict, the court ordered Gerber to pay Franz Engineering $216,000 in difference-in-value damages for the breach, $618,000 in incidental damages for purchase-related costs, and prejudgment interest. The court denied Gerber's motions for JNOV or a new trial, but granted in part its motion to amend the prejudgment interest award. The court then entered judgment on the jury verdict.

Gerber appeals. In addition, Franz Engineering and its president, respondent Allen Franz, seek review of the trial court's determination that consequential damages were unavailable as a matter of law. We affirm in part, reverse in part and remand.

### FACTS

Franz Engineering is a Minnesota corporation that reproduces engineering drawings used in the manufacture of electrical circuit boards. The company was founded in 1965 by Allen Franz who is its president and sole shareholder. In 1984, just prior to the events leading to this lawsuit, Franz Engineering was a profitable company with 28 employees.

Gerber is a Connecticut corporation qualified to do business in Minnesota. Gerber manufactures photoplotting equipment. Photoplotting systems create reproductions—"plots"—on film or glass to be used to manufacture circuit boards.

In late 1984 and again in 1985, Gerber approached Franz Engineering about purchasing photoplotting equipment. Franz Engineering purchased the Gerber 3235 system, which Gerber warranted would produce the high-quality photoplots Franz Engineering customers required. Franz Engineering maintains that the Gerber 3235 system failed to perform as warranted, causing Franz Engineering to suffer such severe financial loss that both Franz Engineering and Allen Franz were required to file for protection under the bankruptcy code. We must now decide whether Gerber breached its warranties and, if so, if it is liable for all or part of the financial losses suffered by Franz Engineering and Allen Franz.

When Gerber approached Franz Engineering about buying a photoplotting system, it provided literature containing pricing information and hypothetical cost and profitability calculations for its 3235 system. Gerber's literature stated that the operation of the 3235 system would yield a monthly profit of over $17,000. This information was based on various assumptions regarding the amount of time the system was operated and hourly billing rates. Furthermore, Gerber sales representatives assured Franz Engineering that the system could be operated 24 hours per day, a factor not considered in the monthly profit estimate.

At the time of purchase, Gerber stated that the industry was demanding high-tolerance work. It further stated the 3235 system had the capability to perform high-tolerance work, that is, it reproduced with a tolerance of two ten-thousandths of an inch in accuracy. The billing rate for high-tolerance plotting was approximately three times the rate for low-tolerance work. Franz Engineering bought the 3235 system because it would be better able to meet industry demand and to generate greater revenues with this system than with a system only capable of performing low-tolerance work. It financed the purchase by entering a lease agreement with International Financial Services Corporation (IFSC). Allen Franz personally guaranteed the financing.

The contract for the purchase provided that Franz Engineering had responsibility

for preparing the installation site in accordance with Gerber's specifications. Franz Engineering constructed a "clean room" to house the system; it claims it paid $154,616.26 for materials, labor, and equipment related to the room's construction and operation.

On November 14, 1985, Gerber shipped the 3235 system to Franz Engineering. Franz Engineering was not ready to receive the shipment. In response to pressure from Gerber, Franz Engineering had acceded to Gerber's request to accept delivery earlier than the parties had agreed. Franz Engineering stored the system until Gerber installed it in March 1986. Gerber installation technician Daniel Levesque testified that the installation took abnormally long, that it was a problem installation, and that these problems rendered the installation unacceptable.

Chris Trusinsky operated the 3235 system for Franz Engineering from March until June of 1986. He testified that during that time the system never consistently produced plots that met Gerber's or customers' high-tolerance specifications. The system did produce low-tolerance plots, but customers seeking high-tolerance plots rejected the plots produced by the system because they were unreliable and inaccurate.

The parties' contract contains a repair-or-replace remedy. Although Franz Engineering expert, Dale Yingling, testified that pursuant to this remedy, Gerber made "Herculean" efforts to make the system operational, the system still could not produce high-tolerance plots. Gerber serviced the system 19 different times and the system was inoperable somewhere between 16 to 25 percent of the nine months Franz Engineering tried to operate it.

It is disputed whether temperature and humidity caused "minor" shifts that rendered the plots unreliable and inaccurate. Gerber's expert, Ronald Larsen, opined that environmental conditions such as temperature and humidity probably caused the shifts. But he also testified that Franz Engineering's clean room was better than many and that he had seen Gerber systems operating successfully in worse conditions. Gerber technician David Waldoch, who did most of the repair work, never noted on his service reports any temperature variations affecting the system's performance. He testified that he was trained to note temperatures on those reports if he believed a problem was related to temperature.

Yingling testified that in his opinion, the system did not perform in accordance with Gerber's specifications. He opined that power surges very likely caused the minor shifts. But he further testified that even considering environmental and electrical factors, the system required an unusual amount of service and the system's "down" time was unacceptable.

Due to these problems, in November 1986, nine months after the installation, respondent Allen Franz requested that Gerber take the system back. Gerber refused. In December 1986, Franz Engineering deactivated the system. The system had not generated revenues to cover its expenses, restricting Franz Engineering's cash flow. Consequently, Franz Engineering could not pay its obligation to IFSC.

IFSC sued respondents for failure to make payments on the lease. Franz Engineering and Allen Franz counterclaimed and Franz Engineering commenced a third-party action against Gerber seeking damages arising from breach of warranties and violations of the Minnesota Consumer Fraud Act. The trial court granted IFSC summary judgment, awarding it $386,155 and the right to repossess the 3235 system. The court also dismissed Franz Engineering's and Allen Franz's counterclaim against IFSC. Both Franz Engineering and Allen Franz were forced to file for protection under the bankruptcy code.

The action proceeded as a breach of warranty and consumer fraud action between Gerber and Franz Engineering. Upon Gerber's motions, the trial court dismissed Franz Engineering's consumer fraud claim, but denied summary judgment on the breach of warranty claims. The court also denied Gerber's motion to exclude any evidence of hypothetical cost and profitability projections for the system. In addition, during trial the court overruled Gerber's objections to testi-

mony concerning statements allegedly made by Franz Engineering's customers.

Before submitting the case to the jury, the trial court ruled as a matter of law that Gerber made an express warranty and that there is an implied warranty of merchantability. Furthermore, it ruled that, as a matter of law, the contract effectively excluded consequential damages.

By special verdict, the jury found Gerber did not breach its express warranty, but that Gerber breached its implied warranty of merchantability and failed to remedy the breach by repair or replacement. The jury also found the remedy failed of its essential purpose. Pursuant to the jury's special verdict, the court ordered Gerber to pay Franz Engineering $216,000 in difference-in-value damages for breach, $618,000 in incidental damages for purchase-related costs, and prejudgment interest.

Gerber moved for JNOV or a new trial and for the court to strike prejudgment interest. The trial court denied these motions, but amended the prejudgment interest award. Gerber appealed. By notice of review, Franz Engineering and Allen Franz seek review of the determination that consequential damages were excluded as a matter of law.

### ISSUES

I. Is there evidence in the record from which reasonable persons could find Gerber breached its implied warranty of merchantability and caused Franz Engineering financial loss?

II. Is there evidence in the record from which reasonable persons could find Franz Engineering was deprived of the essential value of its bargain with Gerber, indicating that the contractual remedy failed of its essential purpose?

III. Did the trial court properly rule that consequential damages were unavailable as a matter of law?

IV. Did the jury properly award Franz Engineering incidental damages?

V. Did the trial court commit prejudicial error by admitting testimony regarding (a) profit projections made during sales negotia-

tions, and (b) customer statements relating to the quality of plots produced?

VI. Did the trial court err in awarding prejudgment interest?

### ANALYSIS

#### I.

■ We uphold a jury's answers to special verdict questions unless they are perverse and palpably contrary to the evidence or the evidence is so clear that there is no room for differences among reasonable people. *Karnes v. Milo Beauty & Barber Supply Co.*, 441 N.W.2d 565, 567 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989).

Gerber argues that the jury found the system was free from defects in materials and workmanship when it found Gerber did not breach its express warranty. Therefore, Gerber concludes it was contradictory for the jury to find Gerber breached its implied warranty of merchantability. We disagree.

#### A. Breach of Implied Warranty of Merchantability

The trial court properly stated that a seller makes an implied warranty of merchantability to a buyer when the seller is a merchant with respect to the goods of the kind it sells to the buyer. *See* Minn.Stat. § 336.2–314 (1986). The court then ruled as a matter of law that there is an implied warranty of merchantability. By making such a warranty, the seller guarantees to the buyer that the goods purchased (1) "pass without objection in the trade under the contract description," (2) are "fit for the ordinary purposes for which such goods are used," and (3) "conform to the promises or affirmations of fact made on the container or label." *Id.*

■ A breach of implied warranty of merchantability is different from that of an express warranty; the jury need not find a specific defect in materials or workmanship to conclude there was a breach of implied warranty of merchantability. *Cf. St. Croix Printing Equip., Inc. v. Rockwell Int'l, Co.*, 428 N.W.2d 877, 879 (Minn.App.1988) (when an apparent conflict arises between express and implied warranties, the warranties are to

be construed as consistent and as cumulative with each other wherever possible under U.C.C. § 2–317), *pet. for rev. denied* (Minn. Nov. 16, 1988).

▪ Testimony shows the system was serviced 19 times and it was inoperable four to six times more often than the average system. Franz Engineering's expert, Yingling, testified that even if some service calls were related to power surges and to handling the system during delivery and/or storage, the total number of service calls here was excessive. There also was testimony that one of Gerber's regional sales managers called the system a "lemon" and a problem.

There is evidence that the 3235 system bought by Franz Engineering could not pass without objection in the trade, was not fit for its ordinary purposes, and/or did not conform to the affirmations made in Gerber's sales literature. Accordingly, the jury could have reasonably found that even though the system was not defective in materials and workmanship, Gerber breached its implied warranty of merchantability.

### B. Causation

▪ In instructing the jury as to proximate cause, the court stated that:

> Proximate cause is an element in an action for breach of express and implied warranties. To carry their burden of proof, plaintiffs must introduce evidence to enable the fact finder to distinguish possible causes of alleged defects without engaging in speculation.

Gerber argues that testimony by both its and Franz Engineering's experts demonstrates that Gerber did not cause the 3235 system to produce plots with minor shifts. As noted above, this issue is disputed, but there is ample evidence from which reasonable persons could conclude without speculation that the shifts were caused by the system and that Franz Engineering suffered losses because it was unable to sell these plots to its customers. *See Nelson v. Wilkins Dodge,* 256 N.W.2d 472, 475 (Minn.1977) (plaintiff fails to meet burden of proving causation if jury would need to speculate among possible causes).

Not only did Franz Engineering lose money because the system produced defective plots, but also because the system was inoperable 16 to 25 percent of the time. Yingling testified that the number of problems with the system and the amount of time the system was inoperable was unusual. Although there is evidence indicating Franz Engineering could have caused some of the system's problems, reasonable persons could find Yingling's testimony persuasive and conclude that Gerber caused Franz Engineering's losses. *See Johnson v. Waletzke,* 448 N.W.2d 541, 542 (Minn.App.1990) (it is the jury's role to determine the credibility of witnesses), *pet. for rev. denied* (Minn. Jan. 12, 1990).

Because the jury could reasonably find that Gerber breached its implied warranty of merchantability and that the breach of this implied warranty proximately caused Franz Engineering financial losses, we affirm the jury's finding of breach of implied warranty of merchantability.

### II.

▪ A buyer is entitled to a remedy if the contract's limited warranty fails of its essential purpose. Minn.Stat. § 336.2–719(2) (1986). A seller's limited warranty generally does not fail of its essential purpose as long as the seller repairs each problem as it occurs. *Jacobs v. Rosemount Dodge–Winnebago South,* 310 N.W.2d 71, 75 (Minn.1981); *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 356 (Minn.1977). But even if the seller makes such repairs, the warranty will fail if circumstances arise to deprive the remedy of its meaning or to deprive a buyer of the substantial value of its bargain. *Id.*

▪ Franz Engineering argues that because Gerber's numerous service calls never rendered the system operable as warranted—to consistently produce acceptable high-tolerance plots—the remedy failed of its essential purpose. *See Durfee,* 262 N.W.2d at 356–357 (commendable efforts and considerable expense do not relieve seller of duty to repair; court's finding that seller could not or would not put car in reasonably good operating condition compels the conclusion

that the remedy failed of its essential purpose).

Gerber would distinguish *Jacobs* and *Durfee* on the basis that the courts in both found a breach of express warranty, indicating the products in question were defective. Gerber reasons that because the jury in this case found no defect, Gerber had nothing to repair. Here, however, the jury found that the system was not fit for its ordinary purpose and/or it did not conform to Gerber's affirmations. Although Gerber constantly repaired malfunctions, evidence indicates that the number of malfunctions was unusually high, the system was inoperable during those times, and the system never properly functioned for the ordinary purpose for which it was to be used. Therefore, reasonable persons could find Gerber deprived Franz Engineering of the essential value of their bargain. We hold the jury properly found the remedy failed of its essential purpose.

Gerber further argues that there is no evidence to support the jury's determination that Gerber failed to fulfill its obligation to repair or replace the system. Because the remedy failed of its essential purpose, we need not address this issue.

### III.

■ The trial court's interpretation of Minn.Stat. §§ 336.2–714 and –715 is a legal matter that we review de novo. *See Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188, 190 (Minn.1990) (statutory construction is a question of law and subject to de novo review on appeal).

Minnesota permits contracting parties to substitute their own remedy for the statutory remedy. *See* Minn.Stat. § 336.2–719(1)(a) (1986). The parties' contract contains a substitute remedy provision, which states:

> [Gerber's] liability and Buyer's remedy under the warranty will be limited to the repair and/or replacement at [Gerber's] election of materials determined by [Gerber] to be defective or non-conforming. * * * The foregoing warranty is in lieu of all other warranties expressed or implied, and of all other obligations or liabilities on the part of [Gerber] for damages, including

but not limited to consequential and/or special damages.

If this contractual remedy fails of its essential purpose, the "remedy may be had as provided in this chapter." Minn.Stat. § 336.2–719(2) (1986) (Minnesota's codification of Article 2 of the U.C.C.). The Uniform Commercial Code is even stronger, providing that when a contractual remedy fails of its essential purpose, it "must give way to the general remedy provisions of this Article." *See* U.C.C. § 2–719(2), cmt. 1.

Citing the language in Minn.Stat. §§ 336.2–714 and –715, the trial court instructed the jury that if the contractual remedy failed of its essential purpose, Franz Engineering is entitled to recover damages, including incidental damages. The court ruled consequential damages were unavailable as a matter of law. But the "general remedy" under these code sections includes both incidental and consequential damages. Minn.Stat. § 336.2–714, –715 (1986); *see also Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365 (8th Cir.1977). The Eighth Circuit in *Soo* held that when a contractual remedy fails of its essential purpose, a contractual provision limiting recovery of consequential damages is ineffective. *Id.* at 1373.

In *Soo*, the Eighth Circuit noted that Minnesota had not yet confronted the issue. *Id.* While Franz Engineering argues that the supreme court later decided this issue in *Durfee*, this issue was not directly addressed in *Durfee*. The warranty in *Durfee* included a repair-or-replace remedy and precluded any award of consequential damages. *Durfee*, 262 N.W.2d at 355–56. After the court found the repair-or-replace remedy failed of its essential purpose, it went on to determine whether consequential damages should be awarded. *Id.* at 357. The court declined to award consequential damages because it found that the plaintiff failed to prove any, not because the contract provision disallowed such damages. *Id.* Therefore, *Durfee* is distinguishable.

White & Summers state that even though U.C.C. § 2–719, comment 1 supports allowing consequential damages in such circumstances, the effect is to grant the buyer something for which it did not bargain.

White & Summers' *Uniform Commercial Code*, § 12–10 at 603 (3d. ed. 1988). Gerber argues that the courts are split on this issue and notes that White & Summers favor upholding a contract's consequential damages limitation even where the contract remedy fails of its essential purpose. But White & Summers would limit this rule to situations in which a contractual provision, separate from the remedy provision, limits consequential damages. *Id.* at 604. Here, the provisions are not separate.

White & Summers cite *American Elec. Power Co. v. Westinghouse Elec. Corp.* as supporting their position. 418 F.Supp. 435 (S.D.N.Y.1976). In *American Electric*, the court found that the remedy was part of the contract's warranty provision, which was independent from the limitation of liability provision. *Id.* at 458. In addition, the court noted that the contract provided a "minimum adequate remedy" in the event that the repair-or-replace remedy failed. *Id.* The court concluded that when a contract contains a minimum adequate remedy, it must be given effect in lieu of allowing the remedies under the code. *Id.* (citing U.C.C. § 2–719(1)). Here, the parties' contract does not contain separate remedy and limitation-of-liability provisions nor does it provide a minimum adequate remedy.

■ We find *Soo* to be compelling authority. *Soo,* 547 F.2d 1365. Franz Engineering bargained away its right to consequential damages in exchange for a repair and replace remedy. As a policy matter, it would be unjust to uphold Gerber's consequential damage limitation when its repair-or-replace remedy failed to be of any use to Franz Engineering. Accordingly, we reverse the trial court's exclusion of consequential damages as a matter of law.

■ Consequential damages include foreseeable lost profits. *Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 920 (Minn. 1990). The record contains evidence of Gerber's statements during sales negotiations regarding the system's capability of generating profits. The record also contains evidence that Franz Engineering did not realize a profit from the system. Moreover, the record indicates the trial court excluded cer-

tain evidence because it related exclusively to consequential damages. There are questions of fact as to whether Franz Engineering's lost profits were foreseeable and, if they were, how much profit was lost. Therefore, we remand this issue for consideration by the trial court.

## IV.

A buyer's damages for breach of warranty relating to goods that it accepted are

> the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.

Minn.Stat. § 336.2–714. Further, "[i]n a proper case any incidental and consequential damages [as defined in 336.2–715] may also be recovered." *Id.*

■ Incidental damages resulting from the seller's breach include "reasonable expense incident to the delay or other breach." Minn.Stat. § 336.2–715(1). The jury awarded Franz Engineering $216,000 in damages as the difference between the system's value as warranted and as delivered. The jury also awarded Franz Engineering $618,000 in incidental damages for expenses related to financing the purchase—(1) $56,000 for lease payments; (2) $385,000 for the unpaid balance of IFSC's judgment against Franz for the system's purchase price; and (3) $177,000 for interest Franz Engineering paid on that judgment. Gerber claims the jury erred in awarding incidental damages because Franz Engineering did not incur these amounts incident to the breach.

Franz Engineering cites *Jacobs* as authority supporting the jury's award of finance charges as incidental damages. *Jacobs,* 310 N.W.2d 71. But the court in *Jacobs* did not indicate it awarded damages for purchase costs or interest thereon. Rather, the court awarded the buyer loan payments, insurance, and license costs incurred while complying with a statutory duty to hold goods with reasonable care *after* revocation pending its return to the seller. *Id.* at 77. Thus, in *Jacobs,* the costs the buyer recovered in incidental damages were costs clearly incurred incident to the breach, not incident to pur-

chase. In contrast, here at least some of the awarded incidental damages relate to costs Franz Engineering incurred because of its financial arrangement to purchase the system.

Finance costs incurred in buying the system are not costs incurred incident to the breach. *See Delhomme Indus. Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 185–186 (5th Cir.1984) (finance costs incurred buying goods are not ordinarily costs incurred incident to a seller's breach because the buyer would have incurred the expense even if the product had operated as warranted). If courts permit a buyer to recover such costs in addition to difference-in-value damages, the buyer could, in effect, recover the cost of goods twice. Therefore, we reverse the $618,000 incidental damages award and remand. On remand, the court must determine how much of the $618,000 Franz Engineering incurred incident to the breach, excluding any costs it incurred purchasing the system. Only costs incurred incident to the breach can properly be awarded as incidental damages.

Franz Engineering incurred expenses building the clean room and operating the system. By notice of review, they argue these expenses were incurred incident to the breach. *See Louis DeGidio Oil & Gas Burner Sales & Serv., Inc. v. Ace Eng. Co.*, 302 Minn. 19, 29–30, 225 N.W.2d 217, 224 (1974). Because the jury was never permitted to consider whether these costs constitute incidental damages, we remand to the trial court to determine if any of these costs are incidental damages.

## V.

We will reverse the denial of a new trial based on a trial court's evidentiary rulings only if the court abused its discretion and prejudicial evidence was erroneously admitted. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990).

### A. Profitability Projections

Gerber argues that the court's admission of evidence regarding profitability projections made in its sales literature was not relevant and prejudiced Gerber. Gerber

claims prejudice because the jury considered evidence of profitability projections in determining Franz Engineering's express warranty claim. *See Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 42 (7th Cir.1980) (seller's opinion that goods could bring a buyer some profit does not create a warranty). Here, the jury found Gerber did not breach its express warranty. Accordingly, we hold that Gerber was not prejudiced by the admission of this evidence. Moreover, on remand, this evidence will be relevant to the issue of consequential damages. *See Mercy Hosp. v. Hansen, Lind & Meyer P.C.*, 456 N.W.2d 666, 672 (Iowa 1990) (appellate court did not consider appellant's argument that admission of evidence was prejudicial error because the jury's verdict was not adverse to appellant on that issue).

### B. Customers' Statements

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R.Evid. 801(c). Hearsay is inadmissible evidence unless it falls within certain exceptions. Minn.R.Evid. 802, 803. Gerber argues that it objected to hearsay testimony on numerous occasions, that the trial court overruled each of these objections, and that it was prejudiced by the admission of the testimony.

Four of Gerber's objections related to conversations Franz Engineering staff had with customers regarding photoplotting done on the 3235 system. One Franz Engineering witness testified that customers told him that plots made on the system were "out of spec" and unacceptable.

Statements of persons not testifying which are offered to prove the truth of those statements—that the plots Franz Engineering made were out of spec and unacceptable— are inadmissible hearsay. *See Elsberry v. Great Northern Ry. Co.*, 265 Minn. 352, 357, 121 N.W.2d 716, 720 (1963). But these statements were admitted to prove that customers rejected the plots rather than to prove the quality of the plots. The witness had personal knowledge that the customers made these

statements; therefore, the testimony was not hearsay.

Similarly, Gerber's other objections all related to testimony based on the personal knowledge of the witnesses regarding operation of the 3235 system and comparisons between the system's performance and Gerber's specifications. Because the information was not relayed to the witnesses by someone who was not in court, we affirm the trial court's determination that this testimony was admissible.

## VI.

A trial court's authority to award prejudgment interest is governed by statute. *See* Minn.Stat. § 549.09 (1986). Because the court's award of prejudgment interest is a question of law, this court reviews it de novo. *See Sorenson,* 457 N.W.2d at 190.

Minnesota generally allows a court to award prejudgment interest in the case of a liquidated claim or where the amount of damages is ascertainable by computation. *Gand v. Jay Bros., Inc.,* 367 N.W.2d 645, 647 (Minn.App.1985). In contrast, a court usually will not award interest on a claim for unliquidated damages because the liable party cannot determine the liability amount in advance. *ZumBerge v. Northern States Power Co.,* 481 N.W.2d 103, 109 (Minn.App.1992), *pet. for rev. denied* (Minn. Apr. 29, 1992). When a defendant can determine potential liability from a generally recognized objective standard of measurement, such as a readily obtainable market value, a court may properly award prejudgment interest. *Potter v. Hartzell Propeller, Inc.,* 291 Minn. 513, 519, 189 N.W.2d 499, 504 (1971).

Gerber argues that because the jury was given discretion to calculate damages, the damages were unpredictable and not subject to prejudgment interest. The jury awarded respondent $216,000 in damages—the difference in the system's value as warranted and as delivered. This award was based on a statutory formula that encompasses an objective standard of measurement. *See* Minn.Stat. § 336.2–714(2). Accordingly, we hold the trial court properly awarded interest on the $216,000. Because we reverse the jury's $618,000 incidental damages award, we reverse the prejudgment interest awarded on this amount.

## DECISION

We affirm the jury's determination that the repair-or-replace remedy failed of its essential purpose. We reverse the trial court's finding that consequential damages were unavailable as a matter of law and remand for a determination of whether such damages are appropriate. We also reverse and remand the incidental damages award for a determination of the amount of damages Franz Engineering incurred incident to the breach. Furthermore, we affirm the court's evidentiary rulings and its award of prejudgment interest on difference-in-value damages. Because we reverse the incidental damages award, we reverse the prejudgment interest awarded on that amount.

**Affirmed in part, reversed in part and remanded.**