COMPUTER NETWORK, INC v AM GENERAL CORPORATION

Docket No. 248966. Submitted December 7, 2004, at Grand Rapids. Decided February 24, 2005, at 9:05 a.m.

Computer Network, Inc., brought an action in the Kent Circuit Court against AM General Corporation and Pfeiffer Infiniti, Inc., raising various claims and seeking damages related to a much repaired Hummer vehicle manufactured by AM General and leased by the plaintiff from Pfeiffer Infiniti. The trial court, Dennis C. Kolenda, J., granted summary disposition for the defendants. The plaintiff appealed the dismissal of claims based on breach of express warranty, breach of implied warranty of merchantability, revocation of acceptance, the Michigan Consumer Protection Act, and the Michigan lemon law.

The Court of Appeals *held*:

1. Pfeiffer Infiniti did not provide an express warranty, so summary disposition for that company was proper regarding breach of express warranty. AM General did provide an express warranty, but provided the repairs each time the Hummer was presented for service, and the plaintiff accepted and used it after the service, thus obviating the claim of breach of express warranty against AM General.

2. Pfeiffer Infiniti had properly disclaimed any implied warranty of merchantability, conspicuously and in writing, so summary disposition for Pfeiffer Infiniti on that theory was appropriate. AM General was a warrantor. The plaintiff was entitled to file suit against AM General under 15 USC 2310 for both written and implied warranties. A genuine issue of material fact exists regarding the plaintiff's claim against AM General for breach of implied warranty. Summary disposition for AM General on the issue of breach of implied warranty was improper.

3. Summary disposition was properly granted for Pfeiffer Infiniti on the plaintiff's theory of revocation of the acceptance of the vehicle. MCL 440.2967 provides for revocation of acceptance of a product whose nonconformity substantially impairs its value. The lessee has the duty to revoke in a timely manner and may not continue using the good, but must hold the good with reasonable care. In this case, the attempted revocation occurred two years

after delivery of the vehicle on a thirty-month lease, and the lessee had continued to use the vehicle. That is neither timely revocation nor holding the vehicle with reasonable care as envisioned by the statute.

4. The plaintiff has no claim under the Michigan Consumer Protection Act, MCL 445.901 *et seq.* That act does not supply protection where, as in this case, an item is purchased primarily for business or commercial purposes rather than personal purposes. Summary disposition was appropriate.

5. Michigan's lemon law, MCL 257.1401 *et seq.*, is inapplicable because it applies to a case where the problem is the same and has not been corrected after a reasonable number of repair attempts, and the problem impairs the use or value of the vehicle. The plaintiff's allegation of wind noise does not support a finding of impaired use or value of the vehicle, and, after repair, the plaintiff made no further complaint to either AM General or Pfeiffer Infiniti. Because there were no reported problems that continued to exist, there is no lemon law claim.

Affirmed in part, reversed in part, and remanded for further proceedings.

Hoekstra, P.J., dissenting, stated that summary disposition on the claim of breach of an implied warranty of merchantability against AM General was appropriately granted. The plaintiff's use of the vehicle totaled more than 46,000 miles, many of which were off-road. Such use approached the 50,000 miles contemplated in the lease and exceeded AM General's 36,000-mile express warranty. The condition of the vehicle at its 3,000-mile checkup and the extensive use by the plaintiff preclude a finding that the vehicle was defective at delivery. Each repair was successfully completed at no cost to the plaintiff. The plaintiff is unable to establish that the vehicle was defective when it left the possession of either the manufacturer or the seller and provided no expert testimony regarding defects. For the same reasons, Judge Hoekstra disagreed with the majority that a question of material fact exists with respect to the plaintiff's claim of breach of implied warranty under the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq.* Judge Hoekstra concurred with the majority in all other respects.

*Consumer Legal Services, Inc* (by *Mark Romano, Matthew W. Delezenne,* and *Christopher A. Winkler*), for Computer Network, Inc.

*Boveri Murphy Rice Ryan & Ladue, LLP* (by *John D. LaDue*), for AM General Corporation.

Before: HOEKSTRA, P.J., and GRIFFIN and BORRELLO, JJ.

GRIFFIN, J. Plaintiff appeals as of right an order granting defendants' motions for summary disposition. We affirm in part and reverse in part.

I

On June 29, 2000, plaintiff, through action of its president John Deskovitz, leased a 2000 Hummer vehicle manufactured by defendant AM General Corporation. Plaintiff obtained a thirty-month lease expiring in December 2002 through defendant Pfeiffer Infiniti, Inc. But, before expiration of the lease, plaintiff filed the instant lawsuit alleging that the vehicle required repairs on at least fourteen[1] occasions during the lease period and that it was out of service for an unreasonable amount of time. Plaintiff asserts that the documentary evidence submitted in opposition to defendants' motions established that the vehicle was out of service for repairs for 199 days during the thirty-month lease.[2] Plaintiff claimed that problems with the vehicle necessitating repairs included engine problems, starting problems, malfunctioning turn signals, power steering fluid leaks, excessive vibration, defective steering, malfunctioning gauges, defective air conditioning, odometer and speedometer malfunctions, defective heating, malfunctioning cruise control, inoperable CD player, excessive rust, and defective painting. Following a hear-

---

[1] At the time of oral argument on defendants' motion for summary disposition, the vehicle had required repairs on seventeen occasions.

[2] Defendants claim that the actual days out of service are less than 199, although they fail to specify an actual number.

ing on motions for summary disposition brought by both defendants under MCR 2.116(C)(10), the trial court granted summary disposition in favor of defendants on eight claims under MCR 2.116(C)(8), and one claim under MCR 2.116(C)(10).

II

Plaintiff initially argues that the trial court erroneously granted summary disposition under MCR 2.116(C)(8), where defendants moved for summary disposition under MCR 2.116(C)(10). Plaintiff argues that the trial court lacked the authority to grant sua sponte summary disposition under MCR 2.116(C)(8), and that summary disposition under this subrule was also improper because it was not given an opportunity to oppose such a motion. We disagree.

A trial court is not necessarily constrained by the subrule under which a party moves for summary disposition. It is well-settled that, where a party brings a motion for summary disposition under the wrong subrule, a trial court may proceed under the appropriate subrule if neither party is misled. *Blair v Checker Cab Co,* 219 Mich App 667, 670-671; 558 NW2d 439 (1996); *Ruggeri Electrical Contracting Co, Inc v Algonac,* 196 Mich App 12, 18; 492 NW2d 469 (1992). In this case, plaintiff was neither misled nor prejudiced by the trial court's consideration of defendants' motions under MCR 2.116(C)(8).

" 'A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint.' " *Adair v Michigan,* 470 Mich 105, 119; 680 NW2d 386 (2004) (citation deleted). The pleadings alone are considered. *Corley v Detroit Bd of Ed,* 470 Mich 274, 277; 681 NW2d 342 (2004). " 'All well-pleaded factual allegations are accepted as true

and construed in a light most favorable to the nonmovant.' " *Adair, supra* at 119 (citation deleted). The motion should be granted where the claims are " 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.' " *Id.*, quoting *Maiden v Rozwood,* 461 Mich 109, 119; 597 NW2d 817 (1999). Because a grant of summary disposition rests on a review of the pleadings alone, the lack of argument from plaintiff with respect to the legal sufficiency of the claims is not necessarily an impediment to a grant of summary disposition under that subrule. Plaintiff formulated its own pleadings. Further, it was aware of the legal arguments offered by defendants and had a full opportunity to respond to those arguments. In ruling on the motions for summary disposition, the trial court believed that the arguments offered by defendants, to which plaintiff responded, required summary disposition under subrule C(8), not subrule C(10). While the propriety of the underlying ruling is subject to challenge, the fact that the trial court granted the motion under subrule C(8), standing alone, is insufficient to warrant reversal.

In reaching our decision, we emphasize that our review of summary disposition decisions is done de novo. *Quality Products & Concepts Co v Nagel Precision, Inc,* 469 Mich 362, 369; 666 NW2d 251 (2003). Moreover, even if a trial court errs in granting summary disposition under the wrong subrule, this Court may review the issue under the correct subrule. See *Spiek v Dep't of Transportation,* 456 Mich 331, 338 n 9; 572 NW2d 201 (1998). Also, it is axiomatic that this Court will not reverse a trial court's decision if the correct result is reached for the wrong reason. *Lane v KinderCare Learning Centers, Inc,* 231 Mich App 689, 697; 588 NW2d 715 (1998).

III

With respect to plaintiff's claims for breach of express warranty, plaintiff concedes that the language of the lease for the 2000 Hummer contained express language disclaiming any warranty by defendant Pfeiffer Infiniti. Because Pfeiffer Infiniti did not provide an express warranty, summary disposition of plaintiff's express warranty claim against Pfeiffer Infiniti was warranted.

AM General offered an express warranty. However, no material question of fact existed with respect to breach of that warranty. John Deskovitz, plaintiff's principal, testified at his deposition that repairs were never refused. The record revealed that warranty repairs were made each of the seventeen times the vehicle was presented for service. Because there was no question of material fact with respect to a breach, summary disposition under MCR 2.116(C)(10) was proper.

Plaintiff nevertheless argues that if the time taken for repairs was unreasonable, there may be a claim for breach of express warranty, regardless of the fact that all repairs were actually made. Plaintiff argues that there is a question of fact whether the repairs were made in a reasonably timely fashion. In *Kelynack v Yamaha Motor Corp, USA,* 152 Mich App 105, 111; 394 NW2d 17 (1986), this Court held that, where a limited express warranty fails of its essential purpose or deprives either party of the value of the bargain, the parties may pursue other remedies under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.* Further, "[w]here a manufacturer or dealer has limited its obligation . . . to repair or replace defective parts, the seller does not have an unlimited time to make the repairs, but rather must repair or replace the parts within a reasonable time." *Kelynack, supra* at 112. "[A]

warranty fails of its essential purpose where unantici-
pated circumstances preclude the seller from providing
the buyer with the remedy to which the parties agreed,
in which event the buyer is entitled to seek remedies
under the standard UCC warranty provisions." *Severn v
Sperry Corp,* 212 Mich App 406, 413-414; 538 NW2d 50
(1995). In this case, there was no evidence indicating
that the manufacturer's limited express warranty failed
of its essential purpose. To the contrary, every time
plaintiff presented the vehicle, repairs were made. In this
respect, the present case is distinguishable from most
defective vehicle cases. See *Durfee v Rod Baxter Imports,
Inc,* 262 NW2d 349 (Minn, 1977), and cases cited therein.
Additionally, there was no evidence that the time allotted
for the presented repairs was unreasonable under the
particular circumstances. There were numerous differ-
ent repairs to the vehicle over a lengthy period, most of
which were not repeat repairs. Plaintiff relies on the
aggregate number of repair days to argue that there is a
question of fact whether the time for repairs was unrea-
sonable. However, it offers no evidence that the time to
perform the numerous, individual repairs was unreason-
able for this specific vehicle. This case is not like *Ke-
lynack, supra* at 112, in which the plaintiff presented his
vehicle for repair because of a tapping noise and the
vehicle was not returned for more than three months.
Nor is this case similar to *Severn,* in which the defendant
was unable to repair the machinery. Here, the vehicle
was always repaired, returned, accepted, and used. Be-
cause there was no question of material fact, summary
disposition under MCR 2.116(C)(10) was appropriate.

IV

With respect to plaintiff's claim for breach of implied
warranty of merchantability, summary disposition was

appropriate for defendant Pfeiffer Infiniti because it properly disclaimed conspicuously and in writing any implied warranty of merchantability. MCL 440.2864. The disclaimer was not invalid under 15 USC 2308, which precludes a supplier that has offered an express warranty from disclaiming or modifying a limited warranty in any respect other than duration. Pfeiffer Infiniti did not provide an express warranty. Thus, there is no question of material fact with respect to plaintiff's claim against Pfeiffer Infiniti for breach of an implied warranty of merchantability. Summary disposition was appropriate.

V

However, defendant AM General was obligated under an implied warranty of merchantability. While it attempted to modify the implied warranty by limiting remedies to those offered under the written warranty, this disclaimer was invalid under 15 USC 2308. On this issue, this Court has stated:

> The warranty of merchantability requires that the goods sold be of average quality within the industry. A warranty of fitness for a particular purpose requires that the goods sold be fit for the purpose for which they are intended; in order to take advantage of this type of warranty, the seller must know, at the time of sale, the particular purpose for which the goods are required and also that the buyer is relying on the seller to select or furnish suitable goods.
>
> * * *
>
> To establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller. Under implied warranty theory, a defect is established by proof that a product is not reasonably fit for its intended,

> anticipated or reasonably foreseeable use. Merchantable is
> not a synonym for perfect. The warranty of merchantabil-
> ity is that goods are of average quality in the industry. . . .
> As to goods accepted, the burden is on the buyer to
> establish any claimed breach of warranty. [*Guaranteed
> Constr Co v Gold Bond Products,* 153 Mich App 385,
> 392-393; 395 NW2d 332 (1986) (citations omitted).]

In the present case, in view of the multiple repairs to
the vehicle and the total days it was out of service, a
genuine issue of material fact exists regarding whether
defendant AM General breached its implied warranty of
merchantability. The seventeen repair visits[3] needed
within such a short time is circumstantial evidence that
the vehicle was defective and not reasonably fit for its
intended use when it left the possession of defendant
AM General. See, generally, *King v Taylor Chrysler-
Plymouth, Inc*, 184 Mich App 204; 457 NW2d 42 (1990),
and *Kelynack, supra.* See also 67A Am Jur 2d, Sales,
§ 849, pp 250-252 ("When a seller does not repair or
replace in order to cure a nonconformity, . . . the limited
remedy stated in terms of repair or replacement has
failed of its essential purpose. . . . Such remedy also fails
of its essential purpose when a seller is simply unable to
cure the nonconformity notwithstanding that the sell-
er's failure to cure was neither willful nor negligent.");
*id.* at § 850, p 253 ("The nonconformity must be re-
moved within a reasonable time. The buyer is not
bound to permit the warrantor to tinker with the goods
indefinitely in the hope that it [sic, they] ultimately may
be made to conform.").

In many respects, the present case is similar to *Int'l
Financial Services, Inc v Franz*, 515 NW2d 379 (Minn
App, 1994), aff'd in part and rev'd in part on other
grounds 534 NW2d 261 (Minn, 1995). There, the plain-

---

[3] On several occasions, more than one malfunction needed repair.

tiff manufacturer of electrical circuit boards purchased from the defendant a photo plotting system that was used to manufacture circuit boards. During the first nine months of its operation, the system repeatedly malfunctioned. Although the defendant made "Herculean" efforts of repair, the system needed service nineteen different times and was out of service for repairs sixteen to twenty-five percent of the nine-month period. The plaintiff's claims of breach of express warranty and breach of implied warranty were both submitted to the jury. The jury found no breach of express warranty because of the defendant's good faith efforts to repair the multiple malfunctions. However, the jury found in favor of the plaintiff on the claim of breach of implied warranty. In affirming the jury's verdict, the Court of Appeals of Minnesota held:

> A breach of implied warranty of merchantability is different from that of an express warranty; the jury need not find a specific defect in materials or workmanship to conclude there was a breach of implied warranty of merchantability. . . .
>
> Testimony shows the system was serviced 19 times and it was inoperable four to six times more often than the average system. [The defendant's expert] testified that even if some service calls were related to power surges and to handling the system during delivery and/or storage, the total number of service calls here was excessive. There also was testimony that one of Gerber's regional sales managers called the system a "lemon" and a problem.
>
> There is evidence that the 3235 system bought by Franz Engineering could not pass without objection in the trade, was not fit for its ordinary purposes, . . . . Accordingly, the jury could have reasonably found . . . Gerber breached its implied warranty of merchantability.

* * *.

Although Gerber constantly repaired malfunctions, evidence indicates that the number of malfunctions was unusually high, the system was inoperable during those times, and the system never properly functioned for the ordinary purpose for which it was to be used. Therefore, reasonable persons could find Gerber deprived Franz Engineering of the essential value of their bargain. We hold the jury properly found the remedy failed of its essential purpose. [*Id.* at 384-386.]

Likewise, in the present case, we hold that, at a minimum, a genuine issue of material fact exists for the resolution by the trier of fact regarding plaintiff's claim against defendant AM General for breach of implied warranty. See also *Wilson v Marquette Electronics, Inc*, 630 F2d 575 (CA 8, 1990).

VI

With respect to the two claims pleaded under the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq.* provides remedies to consumers for breaches of express and implied warranties and permits consumers to file suit for damages. A "warrantor" is a "supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 USC 2301(5). A "written warranty" is

any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, . . . or any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event the product fails to meet the specifications set forth in the undertaking . . . . [15 USC 2301(6).]

15 USC 2310 provides remedies to a consumer for a breach of warranty. A consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under 15 USC 2301 *et seq.*, including failing to comply with written or implied warranties, may bring a suit for damages and other remedies. 15 USC 2310(d)(1). For the purposes of 15 USC 2310, "only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person." See 15 USC 2310(f).

In this case, Pfeiffer Infiniti did not give or offer a written warranty as a warrantor. It sold an extended warranty offered by General Motors, the exclusive distributor of Hummer for AM General. However, it cannot be disputed that the "warrantor" of the written extended warranty was General Motors, not Pfeiffer Infiniti. Pfeiffer Infiniti made no express written affirmations, promises, or undertakings with respect to the quality of the vehicle or with respect to repair, replacement, or refund. Pfeiffer Infiniti was also not obligated under an implied warranty because it validly disclaimed the implied warranties under state law, as previously discussed. MCL 440.2864. Because Pfeiffer Infiniti was not a warrantor, an action under 15 USC 2310 could not be maintained against it. There were no questions of material fact with respect to breach of warranty claims against Pfeiffer Infiniti under the Magnuson-Moss Warranty Act. Therefore, summary disposition was properly entered in favor of defendant Pfeiffer Infiniti.

However, defendant AM General was a warrantor. It is undisputed that it provided a written warranty on the 2000 Hummer. Thus, plaintiff was entitled to file suit

against AM General under 15 USC 2310(d) for damages under both written and implied warranties. For these claims, plaintiff alleged that AM General failed to repair or properly repair defects and failed to honor the written warranty. It also alleged that AM General's actions constituted a breach of implied warranties. In regard to the express warranty claim, the record reveals that the vehicle was repaired every time it was brought in for repairs. Deskovitz admitted that repairs were never refused. Thus, there was no question of material fact with respect to AM General's breach of any express warranty. However, there was a question of material fact with respect to breach of implied warranty. There was evidence that the vehicle was not of average quality, that it was not fit for the purpose of transportation, that it failed to provide transportation, and circumstantial evidence that it was defective when it left the hands of defendant AM General. Because there was a question of material fact with respect to whether the implied warranty was breached, summary disposition on plaintiff's claim under the Magnuson-Moss Warranty Act against defendant AM General was erroneously granted.

VII

With respect to revocation of acceptance, summary disposition was appropriate for Pfeiffer Infiniti under MCR 2.116(C)(10).[4] MCL 440.2967 provides that a lessee may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the lessee, that revocation must occur within a reasonable time after the lessee discovers or should have discovered the ground for revocation, that revocation is not effective until the lessor is notified, and that

---

[4] Plaintiff dismissed this claim against AM General on stipulation before the summary disposition hearing.

a lessee who revokes has the same rights *and duties* with regard to the goods involved as if the lessee had rejected them.

In this case, assuming arguendo that the 2000 Hummer's alleged nonconformities substantially impaired its value to plaintiff, revocation did not occur within a reasonable time as a matter of law. "Where facts are undisputed[,] the question of what constitutes a reasonable time is a question of law." *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789, 817; 286 NW2d 34 (1979). See also *Moore v First Security Cas Co,* 224 Mich App 370, 379; 568 NW2d 841 (1997) (where reasonable minds may differ, the issue whether a reasonable time has expired is a jury question, but, if reasonable minds cannot differ, summary disposition is appropriate), and *Stoddard v Manufacturers Nat'l Bank of Grand Rapids,* 234 Mich App 140, 146-147 n 4; 593 NW2d 630 (1999). The material facts are not in dispute. Plaintiff leased the 2000 Hummer on June 29, 2000. Plaintiff did not notify Pfeiffer Infiniti of its desire to revoke acceptance until March 26, 2002, when the lease was more than two-thirds completed. Plaintiff had presented the Hummer for numerous repairs before that time, and its principal had prior experience with Hummers and their various repair issues. When plaintiff's principal began having trouble with the 2000 Hummer, as he had had with the 1997 and 1999 Hummers he possessed, he was aware of the grounds for revocation. Yet, he waited until the lease was close to its end before notifying Pfeiffer Infiniti of revocation. Under the circumstances, reasonable minds could not differ over whether notification occurred within a reasonable time.

Moreover, there is no question that plaintiff failed to comply with its duties after claiming revocation. MCL 440.2967(5) provides that a lessee who revokes has the

same rights *and duties* to the goods as if the goods were rejected. MCL 440.2962 delineates the duties of a lessee upon rejection of goods. Continued use of the goods is not an option. Rather, under MCL 440.2962, a lessee must hold the goods with reasonable care for a reasonable time. If no instructions are provided by the lessor with respect to the goods within a reasonable time, the lessee may store the goods, ship them to the lessor, or dispose of them and reimburse the lessor. Plaintiff failed to hold the 2000 Hummer with reasonable care or otherwise comply with its duties. Rather, plaintiff continued to use the vehicle for the full term of the lease while the suit was pending.

We reject plaintiff's argument that it was entitled to use the vehicle to mitigate damages. MCL 440.2962 does not permit continued use. In *Henderson v Chrysler Corp,* 191 Mich App 337, 340-341; 477 NW2d 505 (1991), this Court discussed the differences between a claim for revocation and a claim for rescission. In doing so, it noted that, when acceptance of a good is revoked, a buyer may resell the good or continue using it to mitigate damages and cited *Fargo Machine & Tool Co v Kearney & Trecker Corp,* 428 F Supp 364, 378 (ED Mich, 1977), in support of its decision. In *Fargo Machine,* however, the court was clear that continued use of goods after revocation is acceptable only in exceptional circumstances, e.g., where the alternative to continued use was going out of business or where the buyer could not find another place to live and abandoned use as soon as possible. The court in *Fargo Machine* did not unequivocally state that goods may always be used after revocation. We note that in both *Colonial Dodge, Inc v Miller,* 420 Mich 452, 460; 362 NW2d 704 (1984), and *King, supra* at 211, which plaintiff cites, the buyers held the vehicles with reasonable care after revoking acceptance. They did not con-

tinue to use the vehicles. Even if this Court recognizes an exception for continued use after revocation, the exception applies only in exceptional circumstances. There were no exceptional circumstances in this case. Plaintiff had at least one other vehicle at its disposal and could have obtained another leased vehicle to mitigate damages. Plaintiff failed in its duties under MCL 440.2962. As such, its revocation was not effective. Because there were no questions of material fact, summary disposition under MCR 2.116(C)(10) is appropriate.

VIII

Finally, summary disposition was appropriate for the Michigan Consumer Protection Act (MCPA) claims because there was no question of material fact whether the lease was primarily for business purposes. The MCPA, MCL 445.901 *et seq.*, does not supply protection where an item is purchased primarily for business or commercial purposes, rather than personal ones. *Zine v Chrysler Corp,* 236 Mich App 261, 273; 600 NW2d 384 (1999); *Jackson Co Hog Producers, Inc v Consumers Power Co,* 234 Mich App 72, 84-86; 592 NW2d 112 (1999). See also *Slobin v Henry Ford Health Care,* 469 Mich 211, 216-217; 666 NW2d 632 (2003). Notwithstanding plaintiff's representations to the contrary, Deskovitz unequivocally agreed at his deposition that the Hummer was leased primarily for business purposes. The evidence presented to the trial court confirmed that the lease, maintenance, and repairs were paid by plaintiff business. Moreover, the business was listed as the lessee on the lease. We note that Deskovitz initialed a portion of the lease agreement, indicating that the vehicle was intended for personal, family, or household uses. His latter deposition testimony, how-

ever, negated that those purposes were the primary purposes for which the vehicle was leased. Thus, there was no genuine issue of material fact. The MCPA did not apply. Summary disposition for both defendants was therefore proper. MCR 2.116(C)(10).

IX

Plaintiff additionally challenges the trial court's dismissal of its "lemon law" claim, MCL 257.1401 *et seq.*

MCL 257.1402 provides:

> If a new motor vehicle has any defect or condition that impairs the use or value of the new motor vehicle to the consumer or which prevents the new motor vehicle from conforming to the manufacturer's express warranty, the manufacturer or a new motor vehicle dealer of that type of motor vehicle shall repair the defect or condition as required under [MCL 257.1403] if the consumer initially reported the defect or condition to the manufacturer or the new motor vehicle dealer within 1 of the following time periods, whichever is earlier:
>
> (a) During the term the manufacturer's express warranty is in effect.
>
> (b) Not later than 1 year from the date of delivery of the new motor vehicle to the original consumer.

MCL 257.1403(1) provides:

> If a defect or condition that was reported to the manufacturer or new motor vehicle dealer pursuant to [MCL 257.1402] continues to exist and the new motor vehicle has been subjected to a reasonable number of repairs as determined under [MCL 257.1405], the manufacturer shall within 30 days, do either of the following as applicable:
>
> (a) If the new motor vehicle was purchased, . . . .
>
> (b) If the new motor vehicle was leased, the consumer has the right to a refund of the lease price paid by the consumer. The consumer may agree to accept a comparable

replacement vehicle in lieu of a refund for the lease price paid. If the consumer agrees to accept a replacement vehicle, the lease agreement shall not be altered except with respect to the identification of the vehicle.

## MCL 257.1403(5) provides:

It shall be presumed that a reasonable number of attempts have been undertaken to repair a defect or condition if 1 of the following occurs:

(a) The same defect or condition that substantially impairs the use or value of the new motor vehicle to the consumer has been subject to repair a total of 4 or more times by the manufacturer or new motor vehicle dealer within 2 years of the date of the first attempt to repair the defect or condition, and the defect or condition continues to exist. Any repair performed on the same defect made pursuant to [MCL 257.1406] shall be included in calculating the number of repairs under this section. The consumer or his or her representative, before availing himself or herself of a remedy provided under [MCL 257.1401], and any time after the third attempt to repair the same defect or condition, shall give written notification, by return receipt service, to the manufacturer of the need for repair of the defect or condition in order to allow the manufacturer an opportunity to cure the defect or condition. The manufacturer shall notify the consumer as soon as reasonably possible of a reasonably accessible repair facility. After delivery of the vehicle to the designated repair facility, the manufacturer has 5 business days to repair the defect or condition.

(b) The new motor vehicle is out of service because of repairs for a total of 30 or more days or parts of days during the term of the manufacturer's express warranty, or within 1 year from the date of delivery to the original consumer, whichever is earlier. The consumer, or his or her representative, before availing himself or herself of a remedy provided under [MCL 257.1401], and after the vehicle has been out of service for at least 25 days in a repair facility, shall give written notification by return receipt service to the manufacturer of the need for repair of the defect or

condition in order to allow the manufacturer an opportunity to cure the defect or condition. The manufacturer shall notify the consumer as soon as reasonably possible of a reasonably accessible repair facility. After delivery of the vehicle to the designated repair facility, the manufacturer has 5 business days to repair the defect or condition.

If statutory language is unambiguous, it is generally presumed that the Legislature intended the plainly expressed meaning, and a court must enforce the statute as written. *Stanton v Battle Creek,* 466 Mich 611, 615; 647 NW2d 508 (2002). See also *American Federation of State, Co & Municipal Employees v Detroit,* 252 Mich App 293, 305; 652 NW2d 240 (2002), aff'd 468 Mich 388 (2003).

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. The first step in determining intent is to look to the specific language of the statute. When statutory language is clear and unambiguous, judicial interpretation to vary the plain meaning of the statute is precluded. "Statutory language should be construed reasonably and the purpose of the statute should be kept in mind." . . . Provisions of a statute are not construed in isolation, but, rather, in the context of other provisions of the same statute to give effect to the purpose of the whole enactment. [*Alcona Co v Wolverine Environmental Production, Inc,* 233 Mich App 238, 246-247; 590 NW2d 586 (1998) (citations omitted).]

Statutory terms that are not otherwise defined by a statute must be given their plain and ordinary meanings. *Cox v Flint Bd of Hosp Managers,* 467 Mich 1, 18; 651 NW2d 356 (2002).

MCL 257.1403(1) is clear and unambiguous in providing that, if a condition reported under MCL 257.1402 continues to exist and the motor vehicle was subject to a reasonable number of repairs as determined by MCL 257.1403(5), a remedy is provided. Plaintiff fails to

recognize that MCL 257.1403(5) is designed to calculate when a motor vehicle has been subject to a reasonable number of repairs. It is not the provision under which claims are brought or remedies provided. MCL 257.1403(5) is only part of a whole statutory scheme. In addition to demonstrating the existence of a reasonable number of repairs under either MCL 257.1403(5)(a) or (5)(b), there must be a showing that a *reported condition under MCL 257.1402 continues to exist* before a remedy may be obtained. MCL 257.1403(1).

The plain language of MCL 257.1402 requires reporting of conditions that impair the use or value of the vehicle to the consumer or prevent the vehicle from conforming to the express warranty. MCL 257.1402 does not refer to conditions that "substantially" impair use or value, but only conditions that impair use or value. Within the first year, Deskovitz, on behalf of plaintiff, reported numerous defects or conditions, which undisputedly impaired the use or value of the vehicle, including faulty engine thermostats, shaking at highway speeds, and heating or air conditioning malfunctions. During this time, plaintiff also reported "wind noise." But the record does not support a finding that the alleged "wind noise" impaired the use or value of the vehicle. Plaintiff failed to present any evidence that the vehicle's value was diminished as a result of the wind noise. Further, the evidence established that a repair was made to eliminate or minimize the noise, and plaintiff made no further complaint to either AM General or Pfeiffer Infiniti at any time thereafter. Additionally, it is undisputed that plaintiff continued to use the vehicle throughout the life of the lease. The wind noise clearly did not impair the use of the vehicle. There is no question of material fact with respect to whether the wind noise was a condition or defect reported under MCL 257.1402. It was not.

There was also no question of material fact whether any conditions reported under MCL 257.1402 continued to exist. At his deposition, Deskovitz testified that the wind noise continued to exist when he turned in the 2000 Hummer at the end of its lease, but he could not recall any other problems with the vehicle at the time the lease ended. Thus, the only defect or condition that continued to exist was the "wind noise." As previously noted, however, there was no evidence that this defect or condition impaired the use or value of the motor vehicle to plaintiff. MCL 257.1402.

Plaintiff maintains that "the service invoices show that engine defects continued to exist" after they were reported and numerous repairs were attempted. There was no evidence, however, that any engine defects or conditions, which were reported pursuant to MCL 257.1402, continued to exist at either the time the complaint was filed or the time the case was dismissed. Plaintiff's cursory, one sentence argument, that actionable "engine defects" continued to exist, is unsupported by citation of the record or other evidence. Deskovitz testified that he could not recall any continuing problems other than wind noise at the end of the lease. Further, the service receipts demonstrated that the specific engine troubles reported within one year of the delivery of the vehicle were repaired and ceased to exist. Because the evidence did not indicate that any engine defect or condition that was reported within one year of delivery under MCL 257.1402, continued to exist, plaintiff was not entitled to relief under MCL 257.1403(1) for engine defects.

In sum, there were no defects reported under MCL 257.1402 that continued to exist. Thus, recovery was precluded under MCL 247.1403(1). It is therefore unnecessary to consider whether a reasonable number of

repairs took place as determined under MCL 257.1403(5).

## X

Finally, plaintiff argues that the trial court abused its discretion when it failed to allow it to amend its complaint. Plaintiff never moved to amend its complaint, and, therefore, we cannot conclude that the trial court abused its discretion. *Collucci v Eklund,* 240 Mich App 654, 661 n 3; 613 NW2d 402 (2000). Moreover, plaintiff does not identify the nature of any proposed amendments, thereby precluding a determination whether any amendment would be futile. We therefore consider the issue abandoned. *Caldwell v Chapman,* 240 Mich App 124, 132; 610 NW2d 264 (2000).

Affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

BORRELLO, J., concurred.

HOEKSTRA, P.J. *(dissenting).* Because I would affirm the dismissal of this case, I respectfully dissent.

Regarding plaintiff's claim for breach of an implied warranty of merchantability against defendant AM General, I would hold that summary disposition was appropriately granted. Here, plaintiff leased a model H1 Hummer, which is essentially an off-road military vehicle that is sold to the public. Plaintiff took delivery of this vehicle on June 29, 2000, at which time the Hummer had been driven a total of thirty miles. On August 9, 2000, plaintiff presented the vehicle for its regularly scheduled 3,000-mile service check, and in

addition complained only of an air conditioning problem, a loose Velcro strip on the tailgate, and condensation on the dashboard. Ultimately, the vehicle was driven more than 46,000 miles, many of which were off-road, throughout the entire thirty-month lease period. Such use approached the 50,000 miles contemplated in the lease and exceeded AM General's 36,000-mile express warranty. Although this Hummer was undoubtedly less than perfect, its condition shortly after delivery and its extensive use by plaintiff during the period of the lease preclude a finding that the vehicle was defective at delivery. Moreover, even though numerous repairs were necessary, each repair was successfully completed at no cost to plaintiff. Under these circumstances, I conclude that plaintiff is unable to establish that the vehicle was defective when it left the possession of either the manufacturer or the seller. See *Guaranteed Constr Co v Gold Bond Products*, 153 Mich App 385, 393; 395 NW2d 332 (1986). Further, unlike the majority, I find that *Int'l Financial Services Inc v Franz*, 515 NW2d 379 (Minn App, 1994) aff'd in part and rev'd in part on other grounds 534 NW2d 261 (Minn, 1995), in which the plaintiff offered expert testimony indicating that the product at issue there "required an *unusual* amount of service" and suffered an " 'unacceptable' " amount of " 'down' time," is distinguishable. See *id.* at 383 (emphasis added). In this case, however, plaintiff offered no expert testimony regarding whether the Hummer was defective as a result of the number and type of repairs or the length of time that it was out of service, even though the vehicle was designed for the military and was used off-road.

For the same reasons, I also disagree with the majority regarding whether a question of material fact ex-

isted with respect to plaintiff's claim of breach of implied warranty under the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq*.

In all other respects, I agree and join with the majority.