# STATE OF MICHIGAN

# COURT OF APPEALS

BENJAMIN GEORGIS,

        Plaintiff-Appellant,

v

MAJID SHAMMAMI, FERAS SHAMMAMI,
SOHAIL D. GIRJIS, and JP MORGAN CHASE &
COMPANY, f/k/a BANK ONE,

        Defendants-Appellees.

UNPUBLISHED
June 18, 2015

No. 319477
Oakland Circuit Court
LC No. 2011-121824-CZ

Before: MARKEY, P.J., and OWENS and GLEICHER, JJ.

PER CURIAM.

This suit centers on plaintiff Benjamin Georgis's belief that the various individual defendants conspired together and used the mantle of Feras Shammami's bank employment to steal plaintiff's lucrative business interests. The circuit court summarily dismissed plaintiff's suit against the bank defendant and Feras because plaintiff signed a contractual release of claims. The court dismissed plaintiff's claims against Majid Shammami and Sohail Girjis because he missed the statute of limitations and stripped himself of standing when he filed for bankruptcy without listing these potential claims. We discern no error in these rulings and therefore affirm.

## I. BACKGROUND

In 2004, plaintiff and his brother formed E & B Real Estate, L.L.C. and G. Brothers, Inc. to purchase real estate and to operate the Bella Banquet Center in Warren. Plaintiff met with Feras Shammami, a Bank One business advisor with whom he had consulted on previous projects. Through Feras, plaintiff secured a Bank One loan in the names of his businesses, including funds to finance the purchase of the real property. Feras prepared a business plan and market study for the banquet center. Over time, Bank One extended additional loans to cover renovations and development of the banquet center. At some point, Bank One merged with JPMorgan Chase Bank, N.A. Feras became a Chase employee and Chase took over Bank One's rights and duties in relation to plaintiff's loans.

Plaintiff alleges that Feras had ulterior motives during their business relationship. Specifically, plaintiff contends that Feras made false assurances in October 2005 that bank funding for the project would continue, knowing that the well was running dry. When the bank cut off plaintiff's line of credit, Feras recommended that plaintiff approach Majid Shammami,

-1-

Feras's father, and Majid's business partner, Sohail Girjis, for additional financial assistance. After Bank One demanded repayment of its loan, which plaintiff's businesses could not afford, Feras recommended that the businesses refinance through Fifth Third Bank. Plaintiff alleges that the individual defendants convinced him that he needed to convey his interests in the businesses to Majid and Girjis to obtain the refinancing.

In September 2006 and April 2007, plaintiff conveyed interests in both businesses to Majid and Girjis. Thereafter, Majid and Girjis represented that they had acquired full ownership of E & B to operate the banquet center, and had also obtained the liquor license held by G. Brothers. Plaintiff asserts that he did not learn that he had conveyed all his interests in the businesses to Majid and Girjis until December 2009, and in the interim relied on representations by Majid and Girjis that he was still an owner, despite his 2006 and 2007 written conveyances.

Plaintiff filed suit in 2011, alleging claims of (1) fraud or misrepresentation against Majid, Feras, and Girjis; (2) fraud in the inducement against Majid and Girjis; (3) civil conspiracy to commit fraud involving Majid, Feras, and Girjis; (4) breach of fiduciary duty by Majid and Girjis; (5) conversion against Majid and Girjis; (6) fraud and misrepresentation against Bank One; and (7) promissory estoppel against Bank One.

In November 2012, the circuit court granted summary disposition in favor of Feras, Bank One, and its successor on the ground that plaintiff's claims were barred by a release that plaintiff signed in February or March 2006. The court also concluded that summary disposition was warranted because plaintiff incorrectly named JPMorgan Chase & Co. as Bank One's successor in interest, instead of JPMorgan Chase Bank, N.A. The court allowed discovery to continue on plaintiff's claims against Majid and Girjis to determine if those defendants fraudulently concealed from plaintiff his potential cause of action. In November 2013, the circuit court summarily dismissed those claims as well, finding that plaintiff lacked standing. Specifically, plaintiff had filed for bankruptcy in 2007 and his interest in resolving the claims transferred to the bankruptcy trustee. The court also concluded that plaintiff's conversion claim was barred by the applicable statute of limitations, and that plaintiff could not maintain his civil conspiracy claim absent a viable underlying tort claim. This appeal followed.

## II. RELEASE

In February or March 2006, plaintiff executed a guarantee on behalf of E & B with regard to an amended loan agreement with JPMorgan Chase Bank, N.A. The circuit court concluded that plaintiff's fraud, misrepresentation, and promissory estoppel claims against the banks and Feras were barred by a release provision in that agreement. Plaintiff concedes that he signed the agreement and is subject to the terms of the release. He argues that his claims were not covered by the release, however.

We review de novo a lower court's summary disposition decision. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by a contractual release.

A defendant who files a motion for summary disposition under MCR 2.116(C)(7) may (but is not required to) file supportive material such as affidavits,

depositions, admissions, or other documentary evidence. If such documentation is submitted, the court must consider it. If no such documentation is submitted, the court must review the plaintiff's complaint, accepting its well-pleaded allegations as true and construing them in a light most favorable to the plaintiff. [*Turner v Mercy Hosps & Health Servs of Detroit*, 210 Mich App 345, 348; 533 NW2d 365 (1995) (citations omitted).]

If the pleadings and documentary evidence do not reveal a genuine issue of material fact, "the court must decide as a matter of law whether the claim is . . . barred." *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000).

The 2006 release provides:

As further consideration for the Chase Entities entering into this Agreement, each Obligor, in all capacities, and on behalf of its current and former employees, agents, executors, successors, and assigns, releases each Chase Entity, each Chase Affiliate, and their respective current and former officers, directors, employees, agents, attorneys, affiliates, subsidiaries, successors, and assigns from any liability, claim, right or cause of action that exists now or arises later, whether known or unknown, foreseen or unforeseen, that arises from or is in any way related to facts existing on the date of this Agreement. This includes claims related to (1) actions taken, not taken, or allowed to be taken by a Chase Entity or any Chase Affiliate under the Chase Documents; (2) Obligors' relationship with the Chase Entities and Chase Affiliates; (3) any oral agreements; and (4) any banking relationships that an Obligor has or had with a Chase Entity or any Chase Affiliate. This release is a material and essential term of this Agreement.

In *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13-14; 614 NW2d 169 (2000), this Court stated:

The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity.

The release covered "all risks of any injury that the undersigned may sustain while on the premises." As this Court has held, "there is no broader classification than the word 'all.'" The release clearly expressed defendant's intention to disclaim liability for all injuries, including those attributable to its own negligence. [Citations omitted.]

The release in this case broadly applies to "any" liability or claim existing at the time it was signed, and to any claim that might arise later if "in any way related to facts existing on the date of this Agreement." Plaintiff argues, as he did below, that all relevant facts supporting his

claims against the banks and Feras did not exist in February or March 2006, when he signed the release agreement. The record does not substantiate this statement.

The facts supporting plaintiff's claims all existed at the time the release was executed. At the heart of plaintiff's claims against Feras and the banks are statements that Feras made in October 2005, regarding continued financial support for the project from Bank One and its successor, Chase. Plaintiff alleged that these statements were false, because the banks never intended for the project to succeed, and because Feras was involved in a conspiracy with Majid and Girjis to divest plaintiff of his interest in the businesses. Plaintiff contended that key events underlying his claims did not occur until later in 2006, when Feras, Majid and Girjis convinced plaintiff and his brother to transfer their interests in E & B. While certain events did not arise until later, plaintiff alleges the conspiracy was hatched in 2004, and that a plan was already in action at the time the release was signed. If plaintiff's allegations are believed, Feras's role in the conspiracy had already been defined and he already planned to later convince plaintiff and his brother to transfer their business interests to Majid and Girjis. Accordingly, plaintiff has not brought forth any evidence that his allegations against Feras involved facts that truly arose only *after* he signed the release. Therefore, plaintiff's claims against Feras were barred by the terms of the release. As the claims against Bank One and Chase were based on vicarious liability for Feras's actions, those claims were also barred. Summary disposition was appropriately granted.[1]

## III. STATUTE OF LIMITATIONS - CONVERSION

Plaintiff argues that the circuit court erred in ruling that his conversion claim against Majid and Girjis was barred by the statute of limitations. A motion for summary disposition based on the statute of limitations is also reviewed under MCR 2.116(C)(7).

Conversion involves "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). A conversion claim is governed by a three-year statute of limitations. MCL 600.5805(10). The claim accrues when the wrong upon which the claim is based is done, not when damage results. *Brennan v Edward D Jones & Co*, 245 Mich App 156, 158; 626 NW2d 917 (2001), citing MCL 600.5827.

Plaintiff alleged that Majid and Girjis converted his entire interest in E & B, and 100 shares of G. Brothers's stock, in September 2006 and April 2007. Plaintiff did not file this action until September 19, 2011. Plaintiff does not dispute that he filed his action more than three years after Majid's and Girjis's acts of conversion. However, plaintiff contends that he did not discover the conversion until December 2009, because Majid and Girjis fraudulently concealed their wrongful acts. Therefore, plaintiff argues, he is entitled to rely on MCL 600.5855, which provides:

---

[1] Given our resolution of this issue, we need not consider the circuit court's alternate ground for dismissing plaintiff's claims against the banks—his misidentification of the Chase entity involved in the matter.

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

In order to toll the statute of limitations due to fraudulent concealment, the acts relied on must be fraudulent and "of an affirmative character." *Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004). "The plaintiff must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery. Mere silence is insufficient." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996). The plaintiff is also charged with the discovery of facts that, with the exercise of reasonable diligence, he ought to have discovered. *The Meyer & Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 45-46 n 2; 698 NW2d 900 (2005). "If liability were discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations." *Id.* at 48. "The plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Sills*, 220 Mich App at 310. This requires specific allegations of both the acts comprising the fraudulent concealment and proof that they were designed to prevent subsequent discovery. *Phinney v Perlmutter*, 222 Mich App 513, 562-563; 564 NW2d 532 (1997).

Plaintiff argues that Majid and Girjis committed an affirmative act designed to mislead him regarding his ownership interests; they represented to him that he needed to transfer ownership in order to refinance the businesses' loans but that he would remain an owner. As found by the circuit court, however, plaintiff failed to demonstrate that he could not have discovered, through the exercise of reasonable diligence, that Majid and Girjis had acquired the entirety of his interests without any protection for his ownership position. Plaintiff was involved in the asset transfer in April 2007, and admitted signing documents to facilitate those transfers. At that point, plaintiff was aware, or reasonably should have known, that Majid and Girjis had acquired the entirety of plaintiff's business interests and that no document listed plaintiff as a continued owner or expressed any intent to return any interest to plaintiff. Plaintiff did not need to know "the details of the evidence by which to establish his cause of action" by that time. *Doe*, 264 Mich App at 647 (quotation marks, citation, and emphasis omitted). It is enough that he knew that a cause of action for conversion existed in his favor, and he failed to timely act to preserve or prosecute his claim.

Regardless of whether Majid and Girjis misrepresented why the transfers were necessary, plaintiff, through the exercise of reasonable diligence, should have discovered that Majid and Girjis were exerting their ownership interests in April 2007. As the circuit court noted, plaintiff only had to review the documents he signed, either with or without an attorney's assistance to discover that he no longer held an ownership interest in E & B or G. Brothers. This could have been accomplished contemporaneously with the documents' execution. The circuit court did not err in ruling that plaintiff failed to establish a genuine issue of material fact regarding whether the conversion claim was fraudulently concealed. Accordingly, the circuit court properly dismissed the conversion claim under MCR 2.116(C)(7).

## IV. STANDING

Plaintiff also argues that the circuit court erred in ruling that he lacked stranding to bring his claims against Majid and Girjis because those claims belonged to the bankruptcy trustee. We again disagree.

"Whether a party has standing is a question of law that we review de novo." *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008). Summary disposition based on a lack of standing is properly reviewed under MCR 2.116(C)(5) ("[t]he party asserting the claim lacks the legal capacity to sue"). *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Central Mich Univ Trustees*, 295 Mich App 486, 493; 815 NW2d 132 (2012).

> In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(5), this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. This Court reviews de novo a trial court's determination on a motion for summary disposition as well as the legal question of whether a party has standing to sue. [*Id*. (quotation marks and citations omitted).[2]]

Standing involves a determination whether a particular litigant is a proper party to request adjudication of an issue and not whether the issue is justiciable. *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010). Plaintiff filed a bankruptcy petition in June 2007. Plaintiff listed his ownership interests in both E & B and G. Brothers as assets, but did not disclose any potential claims related to the transfer of his interests in those businesses. This Court's decision in *Young v Indep Bank*, 294 Mich App 141; 818 NW2d 406 (2011), is directly applicable to the facts of this case. In *Young*, this Court held that possible causes of action that a plaintiff knows or has reason to know about before filing for bankruptcy are assets of the bankruptcy estate. Unless the plaintiff obtains permission from the bankruptcy court to pursue those claims outside of bankruptcy, or the claims are abandoned by the bankruptcy trustee, the plaintiff lacks standing to file an action in his individual name. *Id*. at 143-147.

The circuit court properly ruled that plaintiff lacked standing to pursue his claims against Majid and Girjis because plaintiff, through the exercise of reasonable diligence, should have been aware of the underlying facts in support of his claims beginning in April 2007, when he could and should have reviewed the documents transferring his interests in the businesses. As previously discussed, plaintiff failed to show that Majid and Girjis took affirmative actions to fraudulently conceal that plaintiff had a cause of action. Plaintiff filed for bankruptcy in June 2007. At the time the bankruptcy petition was filed, plaintiff was charged with knowledge of his claims and he failed to list them on his schedule of assets. Therefore, plaintiff's claims against Majid and Girjis were presumptively contained within the bankruptcy estate. Plaintiff produced

---

[2] Although Majid and Girjis did not move for summary disposition under MCR 2.116(C)(5), because such a motion is reviewed under the same standard that applies to MCR 2.116(C)(7), review under the correct subrule is appropriate. *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005).

no evidence that the bankruptcy court permitted him to pursue the claims, or that the bankruptcy trustee had abandoned them. Simply listing his ownership in the businesses was not sufficient. Plaintiff also failed to substantiate that the trustee was aware of potential claims against Majid and Girjis, a necessary prerequisite to abandonment.

Plaintiff relies on statements by his attorney at the summary disposition hearing to the effect that the trustee's attorney supported plaintiff's present action. However, plaintiff has not cited any authority allowing him to bring a claim belonging to the bankruptcy estate, or to substitute the bankruptcy trustee as the real party in interest, based on an alleged agreement reached *after* he obtained a discharge from the bankruptcy court. Further, plaintiff has not shown that the claims were properly abandoned by the trustee after notice and a hearing. 11 USC 554(a) states that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." As observed in *Young*, 294 Mich App at 147, there can be no abandonment of unscheduled property. Thus, we reject plaintiff's argument that the claims were properly abandoned by the bankruptcy trustee.

Accordingly, the circuit court did not err in ruling that plaintiff lacked standing to pursue his claims against Majid and Girjis.[3] In addition, because plaintiff was left with no underlying actionable tort claim, the court properly dismissed plaintiff's claim for civil conspiracy. *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 507; 686 NW2d 770 (2004), overruled on other grounds *Titan Ins Co v Hyten*, 491 Mich 547, 556 n 4; 817 NW2d 562 (2012).

We affirm.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Elizabeth L. Gleicher

---

[3] Although the circuit court addressed the issue of standing only in relation to plaintiff's claims against defendants Majid and Girjis, the court's reasoning would also apply to the claims against the remaining defendants.